UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKY COX, II, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    Case No. 23-cv-3176 |
| | ) |
| TIMOTHY ADESANYA, *et al.*, | ) |
| | ) |
|       Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff Ricky Cox, II, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Sheridan Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Graham Correctional Center ("Graham"). In the Complaint, Plaintiff alleges Defendants were deliberately indifferent in treating his medical condition, in violation of the Eighth Amendment. (Doc. 1).

The case is now before the Court for a merit review of Plaintiff's claims. The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff files suit against Graham's Physician's Assistant Timothy Adesanya, Graham's Medical Director Dr. Sherry Simmons, and Wexford Health Sources, Inc. ("Wexford").

1

When Plaintiff arrived at Graham on March 1, 2022, he was examined by a nurse who referred him to see Defendant Simmons because his toe "look[ed] horrible." (Doc. 1 at p. 14).

During his first visit with Defendant Simmons on March 2, 2022, Defendant allegedly provided no medical treatment, despite Plaintiff crying out in pain when she squeezed his toe.

Plaintiff alleges he submitted multiple sick call slips to address his left toe and foot pain. He finally saw Defendant Simmons again on May 3, 2022. Plaintiff told Defendant Simmons he was in unbearable pain and that his toe looked infected. Plaintiff alleges Defendant Simmons refused to prescribe antibiotics and misdiagnosed him with gout. Defendant Simmons ordered an x-ray, but because the in-house x-ray machine was broken, Plaintiff was forced to wait months for an appointment with an outside provider.

On August 11, 2022, Plaintiff was examined by Dr. Sigle, a foot and ankle specialist in Springfield, and received an x-ray. Dr. Sigle allegedly told Plaintiff his left great toe needed to be amputated and indicated his toe could have been saved if he had received an x-ray sooner.

Plaintiff's left great toe was amputated on September 9, 2022. After the amputation, Plaintiff alleges that Defendant Adesanya refused to ask the visiting doctor at Graham to fill his pain medication, resulting in unbearable pain.

Plaintiff has stated an Eighth Amendment claim against Defendants Simmons and Adesanya based on their deliberate indifference to his serious medical needs. *See Arnett v. Webster*, 658 F.3d 742 (7th Cir. 2011).

Additionally, Plaintiff brings a claim against Defendant Wexford under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Wexford has potential liability only if it had an unconstitutional policy, practice, or custom which caused the constitutional deprivation. *Salcedo-Vazquez v. Nwaobasi*, No. 13- 606, 2015 WL 7177231, at *7 (S.D. Ill. Nov. 16, 2015)

(citing *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015)). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff must plead a sufficient factual basis for a *Monell* claim, as it is not enough to merely plead the legal elements of the claim. *McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011).

Here, Plaintiff alleges Defendant Wexford has a specific policy in the Wexford Provider Handbook to restrict, delay, and outright deny medical care when such care is expensive. Plaintiff claims that Defendants Simmons and Adesanya received a copy of the handbook and were following this policy when they allegedly denied and delayed treatment for his left great toe. According to Plaintiff, Wexford's policy stated:

> Cost Considerations: A criticism frequently directed toward private managed care programs like Wexford is that services are withheld to improve profits. Similar criticism has been directed at the medical industry in general implying that cost-money-should never be a consideration in treatment, and with progressive government "health care reform" will become a far greater factor than it has ever been under the control of the health profession. Consideration in deciding treatment is given to whether or not the department of corrections has the responsibility to provide treatment. The mere existence of a condition Does NOT CONSTITUTE A RESPONSIBILITY for REPAIR! When considering alternative treatment approaches, cost becomes a consideration. Even then, it is not the determination, but only one of several possible variables considered. Meanwhile, the role of the medical staff is to: 1) provide medical care to individual patients, and 2) seek the best quality we can afford and spread our healthcare budget to effectively cover as many services as possible. Cost has been and must continue to be a consideration. The "cost of service" remains an important factor to be shouldered by each healthcare professional. Being fiscally responsible builds a broader range of treatment alternatives.

(Doc. 1 at pp. 11-12). The Court finds Plaintiff's allegations are sufficient to allege a *Monell* claim against Wexford.

    **IT IS THEREFORE ORDERED:**

    **1)    Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment claim against Defendants Simmons and Adesanya based on their alleged deliberate indifference to his serious medical needs and a *Monell* claim against Defendant Wexford. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

    **2)    Plaintiff filed a Motion to Request Counsel [12]. Plaintiff has no constitutional or statutory right to counsel in this case. In considering Plaintiff's motion, the Court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?** *Pruitt v. Mote*, **503 F.3d 647, 654-55 (7th Cir. 2007). Plaintiff attached a copy of one letter he sent to Attorney Edward Mormon. Demonstrating a reasonable effort to obtain representation, however, typically requires submitting letters from several attorneys declining assistance and copies any documents which show Plaintiff tried to find an attorney.** *See Olson v. Morgan*, **750 F.3d 708, 711 (7th Cir. 2014). Plaintiff has not demonstrated a reasonable attempt to secure his own lawyer. [12] is DENIED with leave to renew.**

    **3)    This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

    **4)    The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

    **5)    Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service.**

**After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.**

**6)      If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

**7)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.**

**8)      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.**

**9)      Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

**10)     Plaintiff shall be provided a copy of all pertinent medical records upon request.**

**11)     Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**12)     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.**

ENTERED:    10/23/2023

s/ James E. Shadid
James E. Shadid
United States District Judge